APPLIED DIGITAL DATA SYSTEMS INC., Plaintiff,

v.

MILGO ELECTRONIC CORPORATION et al., Defendants.

No. 76 Civ. 5454.

United States District Court, S. D. New York.

Jan. 25, 1977.

Wachtell, Lipton, Rosen & Katz, New York City, for plaintiff; George A. Katz, Allan A. Martin, Alan D. Handler, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Milgo Electronic Corp.; Raymond L. Falls, Jr., New York City, of counsel.

Shearman & Sterling, New York City, for defendant Racal Electronics Ltd.; W. Foster Wollen, Michael W. Lillie, New York City, of counsel.

EDWARD WEINFELD, District Judge.

Familiarity is assumed with this Court's decision of January 3, 1977, which granted plaintiff's motion to enjoin consummation of a proposed sale of 312,000 shares of Milgo Electronic Corp. ("Milgo") common stock to Racal Electronics Limited ("Racal") upon the terms set forth therein.[1] Since that time a series of events have occurred. Plaintiff Applied Digital Data Systems, Inc. ("ADDS") has cleared its exchange offer with the Securities and Exchange Commission and has presented it to the Milgo shareholders primarily by way of newspaper advertisements, since thus far it has been denied access to the Milgo stockholder list. ADDS' exchange offer became effective on January 19, 1977 and will expire at 5 p. m. on February 4, 1977 if not extended.

---

1. 425 F.Supp. 1145 (S.D.N.Y.1976).

Prior to the effective date of ADDS' offer, Milgo filed a Schedule 14D with the SEC and mailed to its shareholders letters and information concerning Milgo's financial prospects, including management's forecasts of earnings that Racal previously received and that ADDS had acquired during pretrial discovery procedure. Milgo's Schedule 14D states that "the management of Milgo will recommend that its shareholders reject [ADDS'] proposal [because it] is not in the best interests of the shareholders and does not reflect the long term prospects of Milgo for various reasons . . . ."

On January 20 Milgo announced both that Racal was planning a tender offer for Milgo common stock and that the agreement for the sale of the 312,000 shares of Milgo stock, the principal subject matter of the initial litigation, had been terminated. On January 21 Racal made a tender offer for all Milgo common stock at a price of $26 per share, which offer is scheduled to expire at 10 a. m. on February 1 unless extended. Shares tendered under the Racal offer may not be withdrawn after 10 a. m., January 31.

Racal was able to mail its offer directly to Milgo shareholders because Milgo's management provided it with the stockholder list. There is little doubt that the action of Milgo's management was prompted by a desire to further the prospects of the Racal offer; indeed, Milgo amended its Schedule 14D to include a letter to its shareholders stating that "the Board of Directors has reviewed the terms of the Racal offer and believes that the cash offer made by Racal is more favorable to the stockholders of Milgo than the exchange offer being made by [ADDS]."

Thereafter ADDS renewed a request previously made of Milgo that its stockholders' list be made available so that ADDS could communicate directly with all stockholders and set forth the terms of its proposal. Milgo declined to do so. Its essential position, technically correct,[2] was that ADDS was not legally entitled to the list because ADDS was not a stockholder. Milgo stated, however, that it was willing to make the list available to ADDS, but upon certain conditions. These conditions would in effect impose self-decapitation upon ADDS' offer. They would require ADDS to include in its offering letter to the Milgo shareholders statements depreciating the ADDS offer, such as that the Milgo Directors deem the offer inadequate and not in the best interests of Milgo stockholders; that the Milgo Board of Directors believes the Racal offer of $26 per share to be both reasonable and more favorable to the stockholders of Milgo than ADDS' offer; and that the Chairman of the Board and President of Milgo, together with all but one other member of the Board of Directors of Milgo, have indicated that they intend to tender their shares to Racal. ADDS has indicated that it is unwilling to submit to these Draconian conditions.

ADDS has applied to this Court for an order directing Milgo to deliver to it the most recent list of stockholders. ADDS, apparently in response to Racal's offer, improved its original offer, proposing both to make the preferred stock to be traded for Milgo common convertible into two, instead of one and one-half, shares of ADDS common stock and to increase the redemption price and liquidation preference of the preferred from $25 to $32 per share. While it is true that ADDS, presently not a stockholder of Milgo, is not entitled to the shareholder list either under common law or statutory law, what is at issue here is the shareholders' right to have all pertinent facts relating to the offers made by the contending parties. Thus the matter is one of fairness and involves the exercise of the Court's equity power. As this Court put it in a somewhat related situation:

"[A]n overriding consideration is the right of the stockholders of a corporation to have all pertinent and material information whenever called upon to exercise their right of corporate suffrage—in this

---

**2.** *See* Fla.Gen.Corp.Act § 607.157 (West Supp. 1975). Milgo is a Florida corporation and the

laws of that state thus govern the question of access to its shareholder list.

instance the right to have the information which necessarily embraces the views of those who oppose, as well as those who favor, the merger. As this court stated it in another context relating to proxy statements: 'Congress . . . intended that investors would fully and fairly receive all pertinent information in connection with the exercise of their voting power . . . .' To have one side of a picture hardly fulfills this requirement." [3]

Management's decision to turn its shareholder list over to a "friendly" offeror and to withhold it from a competing offeror would offend express congressional concern in adopting the Williams Act that both the offeror and management (and here a friendly offeror) have an "equal opportunity to fairly present their case," [4] and that "public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding [the offer]." [5] In effect, the shareholder's ability to make up his own mind about competing tender offers upon a full presentation of all material facts is impaired by this sort of management action.[6] Thus, in fairness, Milgo should be required to make its list available to ADDS without the conditions management seeks to impose, and Racal should extend the termination date of its offer until 10 a. m. on February 3, 1977 in order to afford the opportunity for Milgo shareholders to consider without undue pressure both offers before committing themselves to any course of action.

The motion is granted on these terms.

**3.** *American Crystal Sugar Co. v. Cuban-American Sugar Co.*, 276 F.Supp. 45, 49–50 (S.D.N.Y. 1967) (footnotes omitted.)

**4.** S.Rep.No.550, 90th Cong., 1st Sess. 3 (1967).

**5.** *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975).

**6.** *Cf. Armour & Co. v. General Host Corp.*, 296 F.Supp. 470, 475 (S.D.N.Y.1969) ("Indeed, [the equities of the situation] require that the stockholders not be deprived of an opportunity to accept either the cash offer of Greyhound or the exchange offer of General Host, or to reject both. The stockholders are entitled to exercise

### APPENDIX

Soon after the Court made the foregoing disposition it received the following communication from the Securities and Exchange Commission:

"Dear Judge Weinfeld:

We have been advised by counsel for the plaintiff in the above-captioned action that this Court has requested counsel to solicit the views of the Commission on the issue of whether, and under what circumstances, a federal district court in an action under the federal securities laws, may require a company to provide a tender offeror for that company's shares with a list of the company's shareholders. The Commission has considered this question and has authorized me to send you this letter expressing its views.

The federal securities laws do not now expressly impose an obligation on a target company to provide a list of shareholders to a tender offeror seeking to acquire that company's shares. The Commission, however, has proposed, for public comment, a new Rule 14e–1 pursuant to the Williams Act provisions of the Securities Exchange Act of 1934, which would, under certain circumstances, impose such a requirement on a company whose shares are the subject of a tender offer. See, Securities Exchange Act Release No. 1267, CCH Fed.Sec.L.Rep. ¶ 80,-659 (Aug. 2, 1976).[1] The Commission proposed such a rule in the belief that it would further the Williams Act philosophy of providing shareholders of a target company with all available material in-

their own judgment as to these matters. . . . The decision whether to buy, exchange or do neither should rest with each individual stockholder.")

**1.** In an analogous context, the Commission's Rule 14a–7 (17 C.F.R. 240.14a–7), adopted under the proxy provisions of the Securities Exchange Act, requires the management of an issuer, when it has made, or intends to make, a solicitation for proxies, to provide a shareholders' list to a shareholder who requests it.

formation and of assuring that contests for control are fair.[2]

In adopting the Williams Act, Congress evidenced a concern with the need to protect, and to place on an equal footing, all participants in the marketplace, including persons who make tender offers, current stockholders and potential investors.[3] Despite the absence, at this time, of an express requirement that shareholders' lists be provided upon request to tender offerors, the Commission believes that, under certain circumstances, a court may direct, as an appropriate form of relief in an action brought under the Williams Act provisions, that a shareholders' list be provided. See, *Mesa Petroleum Co. v. Aztec Oil & Gas Co.*, 406 F.Supp. 910 (N.D.Tex., 1976).

Courts of equity have traditionally been held to have the power to shape full relief once the jurisdiction of the court is properly invoked,[4] and this principle has been applied in actions under the federal securities laws.[5] The Supreme Court has recognized this in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391 [90 S.Ct. 616, 24 L.Ed.2d 593] (1970), where the court noted that it 'cannot fairly infer from the Securities Exchange Act of 1934 a purpose to circumscribe the courts' power to grant appropriate remedies.' *Accord, J. I. Case Co. v. Borak*, 377 U.S. 426, 433 [84 S.Ct. 1555, 12 L.Ed.2d 423] (1964). Hence, it follows that, when a court determines that it is appropriate in an action under the Williams Act, it is empowered to shape full relief in light of the harm to the plaintiff and consistent with the overall purpose of the Williams Act. We believe, moreover, that, just as a court may issue a temporary restraining order or preliminary injunction where there has been an appropriate showing, a court may fashion other forms of relief on a temporary or interim basis to further the purpose of the statutory scheme under which the court's jurisdiction has been invoked. Where, for example, a target company has disseminated false or misleading information to its shareholders, it might be appropriate for the court to direct the company to distribute correcting literature of its own, or to distribute literature prepared by the tender offeror, or to provide the tender offeror with a shareholders' list so that the tender offeror may itself disseminate its literature.

The particular type of relief, if any, to be granted will depend upon the circumstances of each case, and the Commission takes no position on whether it is appropriate in this case for the Court to direct the target company to produce a copy of its shareholders' list.

Respectfully yours,
/s/ HARVEY L. PITT
Harvey L. Pitt
General Counsel"

---

**2.** See S.Rep.No.550, 90th Cong., 1st Sess. 3 (1967); H.R.Rep.No.1711, 90th Cong., 2d Sess. 4 (1968), [U.S.Code Cong. & Admin.News 1968, p. 2811].

**3.** See, Senate Committee on Banking and Currency, *Hearings Before the Subcommittee on Securities on S. 510*, 90th Cong., 1st Sess. 70–71 (1967).

**4.** See, e. g., Pomeroy, *Equity Jurisprudence*, §§ 114–115, 181, 231, 236(a), 239(a) (5th ed., 1941).

**5.** See, e. g., *Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (C.A.2, 1972).