**A & K RAILROAD MATERIALS, INC., a California Corporation, First Standard Safe Deposit Company of New York, Safe Deposit Company of New York, Joseph M. Drexler & Co., Inc., New York Corporations, and Joseph M. Drexler, Plaintiffs,**

v.

**GREEN BAY AND WESTERN RAILROAD COMPANY, a Wisconsin Corporation, Defendant.**

No. 77–C–539.

United States District Court, E. D. Wisconsin.

Sept. 20, 1977.

638

Bernard S. Kubale, Robert A. Christensen, Roxanne J. Decyk, Foley & Lardner, Milwaukee, Wis., for A & K RR.

James L. Everson, Everson, Whitney, Everson, Brehm & Pfankuch, S. C., Green Bay, Wis., for First Standard Safe Deposit Co. of New York, Safe Deposit Co. of New York, Joseph M. Drexler & Co., Inc. and Joseph M. Drexler.

F. N. Trowbridge, Sr., Vance M. Waggoner, Welsh, Trowbridge, Planert & Schaeger, S. C., Green Bay, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Plaintiffs filed this action on August 22, 1977 seeking a preliminary and permanent injunction against the defendant, Green Bay and Western Railroad Company (GB&W). Plaintiffs want an order permitting any plaintiff or his designee to inspect and copy the current list of GB&W shareholders.

An evidentiary hearing on the preliminary injunction was held August 29, 1977. At that time, the parties agreed that a trial on the merits be consolidated with the hearing on the application for preliminary injunction, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.

Jurisdiction is founded on 15 U.S.C. § 78aa which confers exclusive jurisdiction on the district courts of the United States in cases alleging violations of 15 U.S.C. § 78n(e). The defendant challenges the plaintiffs' claim of diversity jurisdiction contending that the requisite jurisdictional amount is lacking. The federal and state claims in this case arise out of a "common nucleus of operative facts." *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1968). Therefore, the Court can and will consider the state claims on pendent jurisdiction grounds.

The facts of this case are summarized as follows. On October 22, 1974, Burlington Northern, Inc. (BN) made a tender offer for outstanding shares of the Green Bay & Western Railroad Company subject to certain conditions, including authorization from the Interstate Commerce Commission. Prior to making the tender offer, Burlington Northern reached an agreement with the individual directors of GB&W wherein the individual directors agreed to support the tender offer. This agreement was described in the tender offer to shareholders.

As part of this agreement, a copy of GB&W's shareholder list was given to Burlington Northern in October, 1974. According to the testimony of H. Weldon McGee, GB&W's president, GB&W has not given any subsequent shareholder list to Burlington Northern but has provided address change information to the Kellogg-Citizens

National Bank in Green Bay, Wisconsin, the depository for the tendered shares. To date, approximately 85 percent of the outstanding shares have been tendered to Burlington Northern and are currently deposited in Kellogg-Citizens National Bank.

Nearly three years after this tender offer was made, on July 15, 1977, the ICC issued an order approving the application of Burlington Northern. This order was subsequently stayed to allow three railroads, who had petitioned to intervene in these ICC proceedings, an opportunity to appeal the ICC order. This is the current status of the Burlington Northern tender offer.

In mid-August, 1977, plaintiff A & K Railroad Materials, Inc. announced that it was interested in purchasing 51 percent of GB&W stock at $120.00 a share. The total cost to A & K would be about $1.1 million. This tender offer was to expire on August 31, 1977. On August 11, 1977, defendant's president sent a letter to all shareholders informing them of the status of the ICC proceedings. The letter also noted A & K's tender offer and stated that the board opposed this transaction. Plaintiffs do not allege that this letter contained false or misleading statements.

On August 17, 1977, A & K made a demand upon GB&W to permit A & K to inspect GB&W's shareholder list for the purpose of communicating A & K's tender offer to all of GB&W's current shareholders. GB&W refused to permit this inspection. Plaintiffs did have a copy of a GB&W shareholder list but this list was six years old. The president of the defendant corporation testified at the hearing that this six-year shareholder list was about 95 percent accurate. GB&W presently has approximately 230 shareholders.

Plaintiffs filed this action alleging that the defendant's refusal to permit inspection of the shareholder list was a manipulative practice in violation of § 14(e) of the Securities Exchange Act, 15 U.S.C. § 78n(e). Plaintiffs also allege that the defendant made false and misleading statements to the Green Bay Press-Gazette which were subsequently published to the general public, including defendant's shareholders, in violation of § 14(e). Further allegations are that the defendant violated a fiduciary duty to its shareholders to inform them or permit them to be informed of the A & K tender offer and that the defendant intentionally and unjustifiably interfered with A & K's potential economic advantage.

■ In 1968, Congress enacted the Williams Act, amending the Securities Exchange Act. The Williams Act, of which § 14(e) is a part, was designed to control an increasingly popular method of corporate acquisition—obtaining a majority of a corporation's stock rather than its assets. 2 Bomberg, Securities Law § 6.3, pp. 115–19 (1969). The Act's primary purpose was to protect investors. *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579 (5th Cir. 1974), *cert. den.,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

In passing this legislation, Congress was careful not to favor either the offeror or the target company.

The bill avoids tipping the balance of regulation in favor of management or in favor of the person making the takeover bid. 90th Cong., 2nd Sess. 4 (1968); S.Rep.No. 550, 90th Cong., 1st Sess. 3 (1967). *See, also, Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 59, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975).

The Act created a new antifraud provision, section 14(e), which provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably

designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative. 15 U.S.C. § 78n(e).

■■■ The elements of a cause of action under § 14(e) were detailed in *Chris Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 362 (2nd Cir. 1973); *cert. denied* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). The court stated:

. . . A violation of § 14(e) is shown when there has been a material misstatement or omission concerned with a tender offer and when such misstatement or omission was sufficiently culpable to justify granting relief to the injured party. The key concepts are *materiality* and *culpability.*

This Court adopts these standards in determining violations of 14(e).

■■■ In deciding the materiality of the misstatement, the focus is on the effect of the misstatement or omission on a reasonable investor's decision to buy or sell. As was stated in *List v. Fashion Pack, Inc.*, 340 F.2d 457, 462 (2nd Cir. 1965), *cert. denied* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), "The basic test of 'materiality' . . is whether a 'reasonable man would attach importance [to the misstatement of fact] in determining his choice of action in the transaction in question'." *See also, General Host Corp. v. Triumph Am., Inc.*, 359 F.Supp. 749 (D.C.N.Y.1973).

■■■ With respect to the concept of culpability, intent to defraud is not an essential element of a § 14(e) violation, just as it is not essential in a private action under Rule 10b–5. Knowledge of the falsity of the statement or reckless disregard of the truth may be sufficient. Mere negligent conduct is not sufficient. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp., supra.*

With these legal standards for determining liability under § 14(e), it is now necessary to consider the § 14(e) violations charged against the defendant.

■■■ Plaintiffs in this action allege that the defendant's refusal to permit inspection of the shareholder list is a manipulative practice in violation of § 14(e). It is

clear that § 14(e), in and of itself, does not grant a right of access to a target company's shareholder list. *Applied Digital Data Systems, Inc. v. Milgo Electronic Corp.*, 425 F.Supp. 1163 (S.D.N.Y.1977); *Mesa Petroleum Co. v. Aztec Oil & Gas Co.*, 406 F.Supp. 910 (N.D.Tex.1976). Nothing in § 14(e) itself or in case law interpreting that section requires a target company to automatically turn over its shareholder list to any tender offeror. Federal securities legislation only requires honesty and fair dealing. *Butler Aviation International v. Comprehensive Designers, Inc.*, 425 F.2d 842 (2nd Cir. 1970). Further, the refusal to produce a shareholder list is alone not a deceptive practice. *Mesa Petroleum Co. v. Aztec Oil & Gas Co., supra.* Defendant's mere refusal to allow inspection of its shareholder list, without more, is not a manipulative practice in violation of § 14(e).

Plaintiffs further charge that the statements made by GB&W's president which were published in the Green Bay Press-Gazette were false and misleading and, therefore, violated § 14(e). Plaintiffs' objections center around three specific statements. The Court will now examine these statements.

The newspaper article quoted McGee as stating:

The relationship between the GB&W and A & K in buying and selling of railroad materials has been generally satisfactory for the past several years, but, in my opinion, A & K is not a reliable and responsible organization in financial matters, such as the maneuver they are now attempting.

Explaining this comment at the hearing, McGee testified that he had read newspaper articles about A & K and had read their financial reports in formulating his opinion about its financial condition. He was also relying on his forty years of business experience.

■■■ The testimony of Kern Schumaker, president of A & K revealed that, in the fiscal year ending January 31, 1977, the company's net income was approximately

$96,000, although the company had annual net income of several hundred thousand dollars in some prior years. Based on the evidence presented, McGee's statement about A & K's financial reliability was not a material misstatement of fact. There was no indication that the defendant's president acted with any knowledge of the statement's falsity or with reckless disregard of its truth. He was expressing his opinion based on the information available and his years of business experience. This was not a violation of § 14(e).

According to the newspaper article, McGee also stated that because the GB&W directors "control" more than 51 percent of the common stock, all of which is committed to Burlington Northern, A & K could not be successful in enticing 51 percent of the common stock. At the hearing, McGee testified that the directors and their immediate families owned about 6,800 shares of the 18,000 shares outstanding and controlled some 1,200 shares held in trust. By proxy the directors had control of an additional 8,000 shares. All of these were committed to Burlington Northern. McGee's statement referred to "control" of stock, including voting control, not ownership of the stock.

Viewed in the context of the article, the Court finds that McGee's statement about the GB&W directors' "control" of a majority of the stock was not sufficiently misleading to constitute a violation of § 14(e).

The third allegedly false and misleading statement involved McGee's comment that stockholders who may withdraw their tendered securities will not only fail to complete a sale to A & K "but may very well jeopardize their position as soon as final approval is given by the ICC."

Plaintiffs contend that this was inaccurate because the defendant knew or should have known that the A & K offer did not require shareholders to withdraw their shares until A & K made a firm commitment to buy them. McGee testified that he believed shareholders would jeopardize their position because, now that the ICC has given its approval, a binding contract exists between Burlington Northern and the holders of the approximately 85 percent of GB&W shares which have been tendered to Burlington Northern. According to McGee, a withdrawal of these tendered shares would constitute a breach of this contract and could jeopardize the shareholders' position with respect to the tender offer.

McGee's position is based on the fact that the Burlington Northern offer provides under the section on withdrawal rights that securities may be withdrawn "after October 22, 1976 if the ICC shall not have authorized the acquisition of such securities by the Purchaser . . ." The plaintiffs dispute this position. The Court does not have to address this breach of contract argument at this juncture. It is sufficient that the Court finds that this statement is not a material misstatement within the meaning of § 14(e).

Counsel have cited cases where the Court has ordered disclosure of target companys' shareholder lists. These cases are clearly distinguishable. In *Mesa Petroleum Co. v. Aztec Oil & Gas Co., supra,* the board of directors of the target company opposed the tender offer and refused to provide the shareholder list to the offeror. In communicating their opposition, the board told the shareholders not to tender their shares until more information was made available to them. The board failed to mention, though, that the tender offer would expire in a week. On this factual basis, the Court ordered the target company to provide the shareholder list to the offeror.

In *Applied Digital Data Systems v. Milgo Electronic, supra,* two competing tender offers were made within two days of each other. The target company gave its shareholder list to a "friendly" offeror while withholding it from a competing offeror. Under these facts, where timing was essential, the Court directed the target company to give the shareholder list to the competing offeror.

In the present case, the tender offers were not virtually simultaneous as in *Milgo*

*Electronic.* Here Burlington Northern's offer was made approximately thirty-three months before A & K's offer. Fully 85 percent of the shares had been tendered to Burlington Northern before A & K made its initial bid. GB&W also did not deliberately mislead its shareholders as the directors of the target company did in *Mesa Petroleum.*

■ In this case, an examination of the newspaper article in its entirety reveals that the statements made were not basically erroneous. In the context of the article, the Court finds that the statements in question are not materially misleading to the reasonable investor. They generally reflect the opinion of defendant's president. There is no showing of any reckless disregard of the truth on the part of the defendant. For these reasons, this Court holds that these statements made by the defendant and published in the Green Bay Press-Gazette were not materially misleading statements nor manipulative acts within the meaning of § 14(e).

■ Plaintiffs' allegation that McGee's failure to remind shareholders that he was a party to an agreement with Burlington Northern is a violation of § 14(e) is similarly without merit. Management must be careful to disclose all possible conflicts of interest in connection with a tender offer. 2 Bomberg, Securities Law, § 6.3 at 120.9 (1969). In this case, shareholders had knowledge of the agreement because it was explicitly detailed in Burlington Northern's tender offer in October, 1974.

■ Even if these statements constituted a violation of § 14(e), under the facts of this case, the Court believes the disclosure of GB&W's shareholder list would not be the appropriate remedy. The records of a corporation, including shareholder lists, are not public records open to perusal by all. *Stowe v. Harvey,* 241 U.S. 199, 36 S.Ct. 541, 60 L.Ed. 953 (1916).

In this case, the alleged misleading statements of the defendant company were not made directly to GB&W shareholders but to the general public through the communications media. The evidence failed to show why the plaintiffs could not have made similar statements to the newspaper giving their version of the facts. The plaintiffs suffered no disadvantage in this instance because the defendant had access to the shareholder list while the plaintiffs did not. Defendant made its views known through the media. The plaintiffs could have continued the debate in the same forum.

■ Plaintiffs also allege that they are entitled to the defendant's shareholder list because defendant's directors breached their duty to shareholders by failing to inform them of the A & K tender offer. Corporate officers and directors owe a fiduciary duty to the corporation and its shareholders. They are required to act with honesty and good faith. *See, Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326 (7th Cir. 1969). This duty does not extend to third parties with the exception of a limited expansion to cover certain types of creditors.

■ In this case, A & K is not a GB&W shareholder and not a GB&W creditor in a position of having a claim not payable out of the defendant's present assets. Therefore A & K cannot claim the benefits of GB&W's directors' fiduciary responsibilities. As to the claim of the shareholder plaintiffs, it is generally agreed that the directors of a corporation are bound to exercise ordinary care and diligence in performing their fiduciary responsibilities. 19 Am.Jur.2d Corporation, § 1277 (1965). There is no evidence that defendant's directors were negligent in performing their duties by failing to inform shareholders of the A & K offer.

■ The Williams Act itself does not impose an affirmative duty on the target company to provide information about a tender offer to its shareholders. Section 14(e) merely prohibits a person from making materially misleading statements, if any statements are made. A requirement that a target company must disclose and publicize a tender offer it opposes would disadvantage the target company. Such a requirement would "tip the balance" in fa-

vor of the tender offeror—something the Williams Act explicitly wished to avoid.

For the foregoing reasons, the Court finds that the defendant did not breach its fiduciary duty to its shareholders by failing to provide A & K a copy of its shareholder list.

With respect to the state claims, Wisconsin statutes regulate the rights of a shareholder to inspect a corporation's books and records including a stockholder list.

Wis.Stats. § 190.14 provides:

The official custodian of the books, records and papers or other property of every railroad corporation shall keep the same in his possession and at all times during business hours have the same ready to be exhibited to any officer, director or any committee appointed by the stockholders, representing one-tenth of all the subscribed stock, on request, and furnish them or either of them transcripts from the records or proceedings of the board of directors, under his official hand and seal, on the payment to him of the same fee as that required by law to be paid to the register of deeds for transcripts. And said custodian shall on vacating his office make over all such books, records, papers and property in his possession to his successor in office, and where no successor has been elected to the board of directors, or to the person appointed therefor by the stockholders.

This section governs railroad corporations such as the defendant. Although there appears to be no reported case law in Wisconsin applying this section, the Court concludes that "books, records and papers or other property" of a corporation includes stockholder lists. *See, e. g.,* 18 Am.Jur.2d Corporations, § 178 et seq. (1965).

In this case, the plaintiff stockholders do not meet the requirements of § 190.-14. None is an officer or director of the defendant corporation. Collectively they do not purport to be a committee appointed by the stockholders representing one-tenth of all the subscribed stock. Therefore, plaintiff stockholders have no enforceable right to demand that they be allowed to inspect and copy defendant's stockholder list.

Plaintiff shareholders are similarly not entitled to inspect defendant corporation's shareholder list under Wis.Stats. § 180.-43(2). This section provides:

Any person who shall have been a shareholder of record for at least 6 months immediately preceding his demand or who shall be the holder of record of at least 5 per cent of all the outstanding shares of a corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes and record of shareholders and to make extracts therefrom.

Although the Wisconsin legislature has not delineated precisely what constitutes an inspection for a proper purpose, this has been held to be a reasonable purpose germane to a shareholder's status as a shareholder. *State ex rel. McClure v. Malleable Iron Range Co.,* 177 Wis. 582 (1922).

In this case, plaintiff shareholders want the stockholder list so that they can give it to A & K. In *White v. Jacobsen Manufacturing Co.,* 293 F.Supp. 1358 (E.D.Wis.1968), the court held that a shareholder's purpose was improper where he sought access to the shareholder records to secure a merger involving the corporation and, as a stockbroker, to secure a profit on this merger. The Court found that the shareholder was not trying to protect other shareholders against any corporate mismanagement.

Under the facts of the present case, the Court finds that plaintiff shareholders' demand to inspect the defendant's shareholder list was not a "proper purpose" within the meaning of Wis.Stats. § 180.43(2).

Plaintiffs' allegation that defendant's action interfered with A & K's prospective economic advantage is also without merit. Under common law principles, interference with prospective economic advantage gives rise to a cause of action in the

**646**

person injured "where the means of interference adopted alone is unlawful, even though the purpose in itself may be justifiable." *Chris Craft Industries, Inc. v. Piper Aircraft Corp. supra*, at 360. Prosser & Smith, Cases and Materials on Torts, 1131–52 (1967).

 This Court has found that neither the statements made by the defendant nor the refusal to grant inspection of the corporation's shareholder list were unlawful under federal or state statutes. Because no unlawful conduct occurred, the common law cause of action, interference with prospective advantage, is also not available. The requisite elements of such a cause of action are simply not present.

Therefore, based on the foregoing analysis, this Court concludes that the defendant did not violate § 14(e) of the Securities Exchange Act or state statutory law. The statements made to the Green Bay Press-Gazette were not materially misleading so as to affect a reasonable investor's decision to buy or sell his stock. Similarly, the evidence presented fails to show that the directors of GB&W breached any fiduciary duty owed to shareholders.

Finally, even if the Court had found a violation of federal law, the Court is not convinced that giving the plaintiff the defendant's shareholder list is the appropriate remedy. The shareholder list was not used by GB&W to make the challenged statements. Rather, these comments were made to the local newspaper. Plaintiffs could have challenged these statements in the media. The shareholder list was not necessary to communicate their rebuttal. Under the particular facts and circumstances of this case, if liability had been found an award of damages would probably have been more appropriate. Because the Court found the defendants did not violate the law, the remedy issue need not be addressed.

SO ORDERED.