**BROADCAST MUSIC, INC., Plaintiff,**

v.

**ALL–INDUSTRY TELEVISION STATION MUSIC LICENSE COMMITTEE, Leslie G. Arries, Jr., as Chairman of All-Industry Television Station Music License Committee, King Broadcasting Co., Meredith Corporation, Stauffer Communications, Inc., Taft Broadcasting Co., and Tribune Broadcasting Co.-WGN Continental Broadcasting Co., Defendants.**

No. 85 Civ. 4507 (EW).

United States District Court, S.D. New York.

June 21, 1985.

---

Hughes Hubbard & Reed, New York City, for plaintiff; Robert J. Sisk, Norman C. Kleinberg, Michael E. Salzman, Jacqueline D. Gilbert, William H. Voth, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for appearing defendants and counterclaim plaintiff King Broadcasting Co.; Ira M. Millstein, James W. Quinn, R. Bruce Rich, Kenneth L. Steinthal, Lois Peel Eisenstein, Evie C. Goldstein, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This litigation is the sequel to the failure of the parties after months of negotiation to agree upon the amounts and terms of licensing fees to be paid by defendants and other broadcasters to plaintiff, Broadcast Music, Inc. ("BMI"), for copyrighted musical compositions. Before the Court are cross-motions for preliminary injunctions which, in essence, center about the question whether or not a special shareholder meeting of plaintiff should be enjoined.

BMI is one of the two principal music performing rights licensing organizations in the United States. On behalf of composers and music publishers, it licenses performances of copyrighted music on radio and television. All shares of BMI's stock are owned by members of the broadcasting industry and, thus, its shareholders are also its licensees. The defendants are representatives of or individual broadcaster/BMI shareholders: All-Industry Television Station Music License Committee ("the Committee"), and its Chairman, Leslie G. Arries, Jr., represent the local television station industry; the corporate defendants are all broadcaster/shareholders.

BMI moves, pursuant to Rule 65, Fed.R. Civ.P., to restrain the defendants from (1) taking any steps to call a special meeting

of shareholders of BMI; (2) soliciting proxies from other shareholders; (3) communicating with other television broadcasters who are BMI licensees concerning proposed or existing licenses between BMI and its television station licensees; and (4) otherwise interfering with BMI's efforts to deal with its television licensee customers. It contends that defendants seek to "manipulate" the corporate machinery of BMI for anticompetitive purposes, i.e., "to force BMI to deal only through the Committee, to prevent BMI from individual licensing of its affiliates, and to fix the rates paid to BMI at an artificially low level." In short, it is BMI's claim that defendants are engaged in a "garden variety" price fixing conspiracy and that the call for the meeting and the actions proposed thereat are in furtherance of the conspiratorial objectives.

After plaintiff and defendants' representatives failed to reach an agreement, BMI informed its television licensees that their licenses, voluntarily extended during the pendency of other litigation, would expire on June 30, 1985, and that it would send them new proposed licenses for their consideration. Then followed the demand by defendants for plaintiff to call a special shareholder meeting.

Defendants oppose plaintiff's motion for a preliminary injunction prohibiting the calling of such a meeting on grounds that plaintiff's antitrust charge is simply "a tactic designed to delay [BMI's] obligation under the BMI by-laws ... to call the Special Meeting requested by BMI's shareholders." Accordingly, defendant/shareholders cross-move for a preliminary injunction ordering plaintiff to call the meeting pursuant to the due demand of the five shareholder/defendants. In addition, they seek to compel plaintiff to produce a shareholder list based upon a demand therefor, and an order restraining BMI from taking any actions prior to the holding of a special meeting which would frustrate the purposes of such a meeting.

### Plaintiff's Motion for a Preliminary Injunction

■ It is well established in this Circuit that a party seeking preliminary injunctive relief must establish that such relief is "necessary to prevent irreparable harm" and that there is a likelihood of success on the merits of the underlying controversy. "In the alternative, [a party] may demonstrate irreparable injury and the presence of sufficiently serious questions going to the merits as to make them a fair ground for litigation, together with a balance of hardships tipping decidedly toward the movant." [1]

■ It is significant that, up to the time of the breakdown of negotiations, no claim is made that defendants were engaged in conduct violative of the antitrust laws. The charges are based solely upon the demand by the shareholders that a meeting be called to consider their proposed resolutions. Other than the conjectures of BMI's counsel and President as to the motives of defendants in the call for the meeting and the action that may be taken on the matters to be presented to the shareholders, there is not the slightest evidential support for plaintiff's charges and concern for resulting antitrust conduct. Upon argument of these motions it was acknowledged that the sole evidence upon which plaintiff relies to show defendants' anticompetitive purposes is the fact that defendants have demanded a shareholder meeting for the purpose of placing before BMI's shareholders certain resolutions and amendments to the bylaws and Certificate of Incorporation.[2]

RESOLVED, BMI having previously agreed in principle to adopt and consent to a modification of its consent decree to provide for a "rate court" (*i.e.*, provisions for a judicial resolution of a fair and reasonable BMI license fee in circumstances where a negotiated fee has not been reached between BMI and its licensees and related provisions for interim

1. *Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir.1985); *see, e.g., Citytrust, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

2. The proposed shareholder resolutions that are the focus of plaintiff's price-fixing charge read as follows:

Thus, in response to a question put by the Court as to whether the request for the calling of the meeting is sufficient in and of itself to establish plaintiff's likelihood of success on the merits of its antitrust claims, counsel responded: "Exactly." [3]

Even if, however, plaintiff had made a showing of likelihood of success on the merits, it has patently failed to make the requisite showing of "irreparable harm" that would result from the failure to enjoin the calling of the meeting. Not only is it difficult to understand how the exercise of shareholders' corporate franchise would constitute, in and of itself, an antitrust violation, it is equally difficult to understand what irreparable harm would be sustained by BMI. While plaintiff claims that it will suffer a "disastrous" loss of composers and authors and will be exposed to potential antitrust liability, such claims of "irreparable harm" are founded upon assertions which assume the ultimate facts to be established if plaintiff is to prevail.

First, plaintiff's claims of irreparable injury are predicated upon an assumption that the resolutions it claims will result in price fixing will in fact be passed. However, that is by no means a foregone conclusion. Based upon its contention that the broadcaster defendants here are motivated solely by their self-interest in depressing the prices of licenses, plaintiff apparently assumes that a majority of shareholders will concur in defendants' views. However, it was conceded upon the oral argument that the very members of the Board of Directors who voted to institute this action and to deny the demand for a special shareholder meeting are themselves broadcasters. It is therefore apparent that there is disagreement among broadcasters as to the wisdom of the defendants' proposals.

BMI licenses) in relation to its license relationship with radio broadcasters, the shareholders of BMI request and recommend: (i) that management and the Board of Directors develop and implement a similar provision adopting and/or consenting to a modification of BMI's consent decree to provide for a rate court in relation to BMI's license relationships with television broadcasters, and (ii) that management be directed to immediately commence discussions with representatives of BMI's local television broadcast licensees relating to the development and implementation of such rate court provisions.

RESOLVED, until such time as the BMI consent decree is amended to provide for a rate court for BMI's television broadcast licensees (or, failing approval by the Government of a joint, consensual proposal for such an amendment, such time as BMI shall enter into a written agreement with representatives of BMI's local television broadcast licensees providing for an alternative mechanism for determining BMI license fees and matters pertaining to interim licenses in circumstances where BMI and its television broadcast licensees are unable to reach agreement), the shareholders of BMI request and recommend that management and the Board of Directors (i) maintain the *status quo* with respect to BMI's license relationships with its local television broadcast licensees, whereby the station licensees pay BMI 58 percent of any payments for license fees as are made to ASCAP, and (ii) refrain from forwarding, without the consent of the industry-wide representatives of BMI's local television broadcast licensees, any proposed license agreement(s) (or renewals of license agreement[s] to any actual or prospective local television broadcast licensees of BMI with the exception of television broadcasters coming on the air after the date hereof, which shall be governed by the same practices as have been in effect for new stations since February 1, 1983).

The proposed bylaw that plaintiff also relies upon provides:

The Corporation shall take no action with respect to procuring or entering into any license agreements or contracts (or renewal or non-renewal of any license agreements or contracts) between the Corporation and any broadcaster, except by the approval of a vote of three-quarters in number of the Board of Directors then in office (and no such action may be taken by any officer or committee of the Board of Directors), provided that the Board of Directors may authorize any officer to enter into any agreement or license approved by the Board of Directors as provided herein, but only with respect to all material terms approved by the Board and on substantially the same terms as approved by the Board. This Section shall not be amended, altered or repealed except by the holders of a majority in number of the issued and outstanding shares of the Corporation.

Although defendants have not apparently amended their original demand, they concede that this bylaw must be passed as an amendment to BMI's Certificate of Incorporation.

3. Hearing Transcript at 17.

Plaintiff's claims of irreparable harm not only assume that the shareholders will adopt the resolutions, but also that the Board will approve them. The shareholder resolutions which form the principal basis of plaintiff's price fixing claim are merely precatory in nature. They have no force in and of themselves. They "request and recommend" to the Board that it adopt a rate court procedure [4] for resolving licensing disputes with local television broadcasters, and, pending the implementation of such a procedure, maintain the current license relationships with the stations. These recommendations do not have any force in terms of the actual implementation of pricing or licensing policy absent Board approval. Thus, even if the Court were to assume that the proposals would be passed, it would also have to assume Board approval, an assumption which is at once challenged by the refusal of the Board to call the requested meeting.

But plaintiff's claims of irreparable harm not only assume that the shareholder proposals will be passed, and that the Board would accord its approval, but also a loss of composers and authors or the institution by third parties of antitrust litigation. Any claim of the necessity of a preliminary injunction is repelled by such a chain of contingencies to the claimed irreparable harm. Moreover, it is difficult to understand why, if the parties' abortive negotiations up to May 21 did not constitute antitrust conduct, the demand for and the holding of a special shareholder meeting and the prospect of passing resolutions including a rate court, whether realized or not, suddenly triggers antitrust conduct.

Finally, and entirely apart from plaintiff's failure to establish irreparable injury if the requested meeting is held, is the issue of the shareholders' right to exercise their franchise. Plaintiff seeks to silence its shareholders and to deny them their undoubted rights as shareholders of BMI. Under the bylaws of the corporation as well as the laws of the State of New York, the shareholders are entitled to express their views about the direction in which management should take the company. As this Court has stated in another context: shareholders have "a right to make their own decisions in matters pertaining to their economic self-interest, whether consonant with or contrary to the advice of others, whether such advice is tendered by management or outsiders or those motivated by self-interest." [5] Plaintiff's contention that the demand for a special meeting is not an exercise in corporate democracy, but rather that its "sole purpose" is to fix prices simply assumes the ultimate question to be proven upon a trial.

Accordingly, plaintiff's motion for a preliminary injunction is denied.

### Defendants' Motion for a Preliminary Injunction

Entities owning more than ten percent of the stock of BMI having made due demand upon the Secretary of the corporation, the Court directs plaintiff forthwith to call a special shareholders meeting, pursuant to the bylaws, upon at least ten days notice, and in accordance with the requirements of the New York Business Corporation Law. The Court also directs that plaintiff forthwith produce a shareholder list to defendants, plaintiff having failed to establish any grounds upon which such a request may be validly denied.

However, the Court sees no ground upon which to justify an order, as defendants request, compelling plaintiff either (1) to refrain from negotiating directly with individual broadcaster/licensees; or (2) to hold the meeting prior to June 30. Since defendants disavow any antitrust purpose

---

**4.** The rate court procedure is one whereby licensees and a licensing organization may have their fee disputes judicially determined.

**5.** *American Crystal Co. v. Cuban-American Sugar Co.,* 276 F.Supp. 45, 50 (S.D.N.Y.1967); *see also Conoco, Inc. v. Seagram Co., Inc.,* 517 F.Supp. 1299 (S.D.N.Y.1981); *Applied Digital Data Systems v. Milgo Electronic Corp.,* 425 F.Supp. 1163 (S.D.N.Y.1977); *Armour & Co. v. General Host Corp.,* 296 F.Supp. 470 (S.D.N.Y. 1969).

in their demand for the shareholder meeting and the actions to be considered thereat, there is no reason to prohibit, during the pendency of the meeting, BMI from negotiating directly with other broadcasters with respect to licensing terms upon expiration of their present contracts. So, too, there is no reason to prevent these defendants or any other television broadcasters from communicating with one another, providing, of course, such communications are not for the purpose of antitrust activity.

Finally, it should be noted that the Court's proposal, pursuant to Fed.R.Civ.P. 65(a)(2), that the matter be disposed of on the merits was foreclosed by the parties' positions.

Submit order.